IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Hardy Lassiter, | ) | C/A No. 8:14-cv-03613-DCN-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Reynolds, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 15.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28
U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule
73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for
relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on September 5, 2014.[1]  [Doc.
1.] On December 16, 2014, Respondent filed a motion for summary judgment and a return
and memorandum to the Petition.  [Docs. 15, 16.]  The same day, the Court filed an Order
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the
summary judgment procedure and of the possible consequences if he failed to adequately
respond to the motion.  [Doc. 17.]   On April 17, 2015, Petitioner filed a response in
opposition to the motion for summary judgment.[2]  [Doc. 33.]  On April 6, 2015, the Court

_____

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on September 5, 2014.  [Doc. 1-2 (enveloped stamped
received by the prison mail room on September 5, 2014).]

[2]Petitioner also submitted a letter related to his Petition [Doc. 24], which the Court
considers responsive to Respondent's motion for summary judgment.

directed Respondent to supplement the record with file-stamped copies of the remittitur(s) in Petitioner's direct and PCR appeal(s) so that this Court could adequately consider Respondent's statute of limitations defense. [Doc. 30.] Respondent supplemented the record on April 20, 2015. [Doc. 32.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at Lee County Correctional Institution pursuant to orders of commitment of the Spartanburg County Clerk of Court. [Doc. 1.] In January 2006, Petitioner was indicted for two counts of pointing and/or presenting firearms at persons and two counts of armed robbery and possession of a firearm during the commission of a violent crime. [App. 516–23.[3]] On October 30, 2006, represented by Katherine Hodges ("Hodges"), Petitioner proceeded to trial along with his co-defendant. [App. 1–406.] Petitioner was found guilty of all counts [App. 388–89] and sentenced to thirty years for the charges of armed robbery and five years for the charges of pointing and/or presenting firearms, to run concurrent, and sentenced to five years on each of the charges of possession of a firearm during the commission of a violent crime, to be served consecutively to the other sentences [App. 401–02].

---

[3]The Appendix can be found at Docket Entry Numbers 16-1 through 16-2.

2

**Direct Appeal**

A notice of appeal was timely filed. [Doc. 16-4.] Lanelle C. Durant, Appellate Defender with the South Carolina Commission on Indigent Defense, filed a brief on Petitioner's behalf, dated February 20, 2008. [Doc. 16-5.] The brief raised the following issues:

> 1. Did the trial court err in failing to suppress Appellant's clothing seized from appellant's private locker at the jail when search warrant was invalid and Appellant had an expectation of privacy?
>
> 2. Did the trial court err in failing to give a mere presence charge to the jury as requested by Appellant?

[Doc. 16-5.] On December 11, 2008, the South Carolina Court of Appeals affirmed the conviction. [Doc. 16-7.] Remittitur was issued on December 30, 2008. [Doc. 16-8.]

**PCR Application**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on May 27, 2009. [App. 407–12.] Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

> (a)    4th Amendment violation
>
> (b)    6th Amendment violation
>
> (c)    14th Amendment violation

[App. 408.] In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

> (a)    4th Amendment violation - seizure of the applicants body and seizure of the applicants clothing
>
> (b)    6th Amendment violation - ineffective assistance of counsel

3

> (c)    14th Amendment violation - the applicants due process
>         was violated

[App. 409.]  The State filed a return, dated October 20, 2009 [App. 413–19], and Petitioner,

represented by Alan Lazenby ("Lazenby") filed an amended PCR application on September

10, 2010.  [App. 420–28.]  The amended PCR application added the following grounds,

quoted substantially verbatim:

> (d)    Trial counsel was ineffective for failing during pre-trial to
>         challenge the affidavits issued in support of the
>         Applicant's arrest warrants, No.  K-070014,  No.
>         K-070015, No. K-070018, No. K-070020, K-070022, No.
>         K-070024 which set forth Officer Collins' conclusions
>         that the Applicant committed two (2) counts of Armed
>         Robbery and four (4) counts of Pointing and Presenting
>         Firearms but discloses none of the underlying facts that
>         lead officer Collins to reach those conclusions.
>
> (e)    Trial counsel was ineffective for failing to introduce
>         during pre-trial the exculpatory evidence of the affidavits
>         issued in support of the Applicant's arrest Warrants.
>         See Glover v. State 458 S.E.2d 538 (1985)
>
> (f)    Trial counsel was ineffective for failing to do an
>         independent investigation regarding the affidavits issued
>         in support of the Applicant's arrest warrants.  See Ard v.
>         Catoe 642 S.E.2d 597
>
> (g)    Trial counsel was ineffective for failing to argue on
>         Applicant's motion to suppress his clothing that it was
>         obtained from the Spartanburg County Detention Center
>         when he had an expectation of privacy.  Tr. p. 51, lines
>         16–25, p. 52 lines 1–25, D.53 lines 1–20.
>
> (h)    Trial counsel was ineffective for failing to introduce the
>         exculpatory evidence of states witness Tunisha Jeters
>         Consent Search Authorization Form during pre-trial to
>         support the motion to suppress argument regarding the
>         Applicant having an expectation of privacy within the
>         Detention Center.  See Glover v. State 458 S.E. ~ 538
>         (1985); Tr. p. 53 lines 1–20

4

(i)     Trial counsel was ineffective for failing to file a motion prior to trial to have the Solicitors' office disclose the in-camera footage within the Spartanburg Public Safety Department possession to reinforce there being no probable cause to arrest the Applicant for Armed Robbery and Pointing and Presenting Firearms. See Brady v. U.S. 397 U.S. 742, 755, 90 S.Ct. 1463, 1472 25 L.Ed 2d 747 (1970); Tr. p. 359 lines 9–10

(j)     Trial counsel was ineffective for failing to do an independent investigation regarding the in-car-camera footage prior to trial. See Ard v. Catoe 1642 S.E. 2d 597.

(k)     Trial counsel was ineffective for failing to make a motion during pre-trial to quash indictment No. 06-GS-42-0247 when predated discovery documents indicated that the moneys or goods were not the property of states witness Christine Drummond as presented in the indictment.

(l)     Trial counsel was ineffective for failing to introduce the exculpatory pre-dated discovery documents to support a pre-trial motion to quash indictment No. 06-GS-42-0247. See Glover v. State 458 S.E. 2d 538 (1985).

(m)     Trial counsel was ineffective for failing to make a motion during pre-trial to quash indictment No. 06-GS-42-0248 when predated discovery documents did not indicate prior to the convening of the grand jury, during or any time after prior to trial that any moneys or goods were taken from the person or presence of states witness Steven Bruner.

(n)     Trial counsel was ineffective for failing to introduce the exculpatory pre-dated discovery documents to support a pre-trial motion to quash indictment No. 06-GS-42-0248. See Glover v. State 458 S.E. 2d 538 (1985).

(o)     Trial counsel was ineffective for failing to introduce during pre-trial the exculpatory evidence of the May of 2006 Bond Hearing Transcript to prove that the

Applicant was never legally under indictment.  See Glover v. State 458 S.E. 2d 538 (1985).

(p)    Trial counsel was ineffective for failing to do an independent investigation regarding the Applicant's indictments.  See Ard v. Catoe 642 S.E.2d -597.

(q)    Trial counsel was ineffective for failing to object to the in-court-identification of the Applicant made by states witness Tunisha Jeter when there was nothing to prevent an out-of-court identification.  Tr. p. 151 lines 11-25.  See Emanuele v. U.S. 51 F.3d 1123, 1132 (1995).

(r)    Trial counsel was ineffective for failing to object to the in-court-identification of the Applicant made by states witness Tunisha Jeter in regards to her inconsistent statements as well as testimony during trial.  Tr. p. 162 lines 3-9, p. 162 lines 1820, Tr. p. 165 lines 7–11, Tr. p. 166 lines 8–18, Tr. p. 169 lines 1–14, Tr. p. 170 lines 5–25, p. 171 lines 1–22, Tr. p. 178 lines 13–25, p. 179 lines 1–21, Tr. p. 180 lines 12–24. Support thereof: Tr. p. 359 lines 15–25, p. 360 lines 1–25, p. 361 lines 1–14.

(s)    Trial counsel was ineffective for failing to object to the testimony of state witness Tunisha Jeter regarding her continuous pattern of fabrication due to being scared all throughout her statements and testimony as she admitted during trial.  Tr. p. 162 lines 3–13, p. 162 lines 18–20, Tr. p. 165 lines 7–11, Tr. p. 177 lines 14–25, p. 178 lines 1–12, Tr. p. 180 lines 12–25, p. 181 lines 1–6.

(t)    Trial counsel was ineffective for failing to object to the in-court-identification of the Applicant made by states witness Steven Bruner when he believe that he ",as shown photographs after the Applicant's arrest by the Spartanburg Public Safety Department, but never identified the Applicant in an out-of-court identification. Tr. p. 144 lines 1–18, Tr. p. 147 lines 21–25, p. 148 lines 1–4; See U.S. v. Emanuele 51 F.3d 1123, 1132 (1995).

(u)    Trial counsel was ineffective for failing to object to the in-court-identification of Applicatnt made by states witness Steven Bruner specifically in regards to the

6

incorrect in-court-identification of Officer Gallman who states witness Steven Bruner testified to being with for twenty-five minutes while giving his statement opposed to the very brief confrontation he testified to encountering during events that took place on the very same day of October 6, 2005.  Tr. p. 149lines 1–25, p. 150 lines 1–13.

(v)     Trial counsel was ineffective for failing to object to the in-court-identification of the Applicant made by states witness Steven Bruner when on a very brief confrontation he admitted that his main focus was on the weapon pointed in his face and that he was traumatized.  Tr. p. 143 lines 16–22, Tr. p. 148 lines 2–7, Tr. p. 149 lines 17–18.

(w)     Trial counsel was ineffective for failing to object to Solicitor Barry Barnette's improper comment during closing arguments in regards to leading the jury to believe that D.N.A., fiber and fingerprint analysis are only conducted for unknown suspects. Tr. p. 335 lines 17–19.  Also support to reinforce his improper comment: Tr. p. 348 lines 7–10.

(x)     Trial counsel was ineffective for failing to object to Solicitor Barry Barnette's improper comment during closing arguments in regards to lending the jury to consider there being a third male suspect opposed to two which would account for other evidence found in connection with this case.  Tr. p. 333 lines 4–6.  Also support to reinforce his improper comment: Tr. p. 343 line 25, p. 344 lines 1–6.

(y)     Trial counsel was ineffective for failing to cite case law or authority to support the request for a mere presence instruction.  Tr. p. 324 lines 16–25, p. 325 lines 1–13.

[App. 422–25.]

A hearing was held on September 15, 2010.  [App. 429–505.]  On November 24, 2010, the PCR court filed an order of dismissal, denying and dismissing the application with prejudice.  [App. 506–15.]

7

A notice of appeal was timely filed.  [Doc. 16-9.]  Robert M. Dudek of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina, dated August 4, 2011.  [Doc. 16-10.] The petition asserted the following as the sole issue presented:

> Was defense counsel ineffective for failing to object to the solicitor's closing argument which concluded with him asking the jurors to remember what the victims went through, "remember what those people must have went through in that store" since this was an impermissible Golden Rule argument in the case where the identity of the robber's was the critical issue?

[*Id.* at 3.]  The Supreme Court of South Carolina transferred Petitioner's PCR appeal to the South Carolina Court of Appeals, which denied the petition on September 11, 2013 [Doc. 16-12] and remitted the matter to the lower court on September 27, 2013 [Doc. 16-13].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on September 5, 2014.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:**   Petitioner raised a sixth amendment United States constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of fourteenth amendment claims, that if properly challenged, would have resulted in suppression of the in-court-identification by Steven Bruner and dismissal of his case.

*Supporting facts*:   Mr. Bruner believed that he was shown photographs after I was arrested but I was never identified in an out-of-court photographic line up. There was nothing to prevent Mr. Bruner from doing an out-of-court identification.  In court, he was asked to identify the officer he'd been with

8

for twenty five minutes the day of my arrest who took his initial statement. The officer was officer Gallman who he misidentified by identifying officer Matthew Dean. Mr. Bruner stated that he was in the solicitors office all day the day before he made his in-court-identification but later stated he spoke with the solicitor briefly that morning.

Mr. Steven Bruner believed that he was shown photo's of me after I was arrested. I was never identified in an out of court identification. It is a fact that Mr. Bruner misidentified the officer who took his initial statement whom he was with for at least twenty minutes as the trial transcript will reflect. Mr. Bruner never attempted to do any type of out of court identification. There was nothing to stop Mr. Bruner from doing an out of court identification. It is a fact that he was unsure about many things pertaining to this case as the record will reflect.

**GROUND TWO:**     Petitioner raised a sixth amendment United States Constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of Fourteenth amendment claims, that if properly challenged, would have resulted in suppression of the in-court-identification by Ms. Jeter and dismissal of his case.

*Supporting facts*:     Ms. Jeter never identified me prior to trial. There was nothing to prevent her from doing an out-of-court identification. Ms. Jeter not only lied in statements but also lied in trial court. Ms. Jeter took a plea agreement but her sentence was held up until after the trial. She admitted in trial that she didn't want to go to jail and wanted to get out of trouble. She claimed to be in an intimate relationship with one of the robbery suspects for three months but could not give the court his real name. She admitted that the cast worn during the robbery was hers and that she tried to pick it up out of the street after dropping it becuase her I.D. was inside of it.

9

Ms. Jeter never identified me in an out of court identification.     Ms. Jeter not only lied in statements but in trial as well. There was nothing to prevent Ms. Jeter from making an out of court identification.  Ms. Jeter took a plea agreement but her sentence was held off until after the trial. She agreed to take the plea in August which was two months before the October trial.

**GROUND THREE:**     Petitioner raised a Sixth amendment United States constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of the 4th and 14th amendment claims, that if properly challenged, would have resulted in there being no probable cause for the warrantless arrest and dismissal of his case.

*Supporting Facts*:     I was not arrested at the scene of the crime.  I was not in possession of anything linked to this case.  The day I was arrested exhibit No. 5-69 clothing of Hardy Lassiter did not match up to the statements given by all witnesses nor does the clothing match the inventory sheet.  If the clothing still exist it will show that I was wearing a black T-shirt, a pair of blue sweat pants and a pair of shell head adidas.  The video tape of the court trial will show that the state quickly put my clothing back in the bag once realizing that the clothing didn't match.

I was not arrested at the location of any robbery that I was convicted of.  I was not in possession of anything linked to this case when I was arrested.  There was no probable cause in any way to arrest me for the crimes that I was convicted of.

**GROUND FOUR:**     Petitioner raised a sixth amendment United State constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 14th amendment claims, that if properly challenged, would have resulted in a Brady

10

violation of missing evidence regarding the dash cam video and dismissal of his case.

*Supporting Facts:*     It is protocol that all police cars are fully operational regarding dash cam or in-car-camera video footage which was not done in my case. I was denied my right to have this evidence entered or presented to establish whether there was probable cause to arrest me.  This video would have also shown the brutal k-9 attack inflicted upon me the day I was arrested.  The state put the burden on me to produce the footage at my Post Conviction proceeding as the record will reflect.   It is a fact that I'm incarcerated and cannot produce the footage on my own.

It is protocol that all law enforcement vehicles are fully operational regarding dash cam video or in-car camera footage which was not done in my case.  My right to have video footage presented as evidence in this case was violated.  This video footage should have been presented to establish me whether there was probable cause to arrest me for the crimes I was convicted of.

**GROUND FIVE:**     Petitioner raised a sixth amendment United States constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 4th and 14th amendment claims, that if properly challenged, would have resulted in suppression of the affidavits issued in support of the arrest warrants and dismissal of his case.

*Supporting Facts:*     In the PCR testimony Ms. Hodges openly admitted that the affidavits issued in support of the arrest warrants are conclusionary PCR transcript page 59 line 3, and on page 42 lines 9–14.  Her only defense was that she wasn't representing me at the preliminary hearing but it is a fact that she knew about the conclusionary affidavits and could have raised it during pretrial. Trial counsel raised the issue about the affidavits issued in support of the search warrants which

were also not raised at the preliminary hearing. trial transcript page 47 lines 1–18. The search warrant affidavit was sworn to on October 7th which was one day after my arrest. The fact remains that she could have raised the issue during pretrial regarding the arrest warrants just as she raised the issue with the search warrants.

**GROUND SIX:**     Petitioner raised a sixth amendment United States constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 4th and 14th amendment claims, that is properly challenged, would have resulted in the suppression of the search warrants regarding the unsigned returns and dismissal of his case.

*Supporting Facts:*     Trial counsel never attempted to establish the fact that the returns on the search warrants were unsigned which is a violation of the warrant statue, during pretrial.

**GROUND SEVEN:** Petitioner raised a sixth amendment United States Constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 14th amendment claims, that is properly challenged during pretrial, would have resulted in indictment # 2006-0247 being quashed and dismissal of his case

*Supporting Facts:*     Trial counsel should have raised the issue regarding indictment # 2006-0247 during pretrial. Federal Rule 12 states that all defects in indictments must be raised first during pretrial. This applys to the state as well. In my case it was raised in the direct verdict. The indictment stated that the property was the property of Christine Drummond but was actually the property of Dale Horton.

**GROUND EIGHT:**     Petitioner raised a sixth amendment United States Constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge

12

violations of the 14th amendment claims, that if properly challenged during pretrial, would have resulted in indictment #2006-0248 being quashed and dismissal of his case.

*Supporting Facts:*    Trial counsel should have raised the issue regarding indictment #2006-0248 during pretrial. Federal Rule 12 states that all defects in indictments must be raised first during pretrial. This apply to the state as well. In my case it was raised in the direct verdict. The indictment stated that money was taken from Mr. Bruner but there was never any mention of money being taken from Mr. Bruner in any statements or in any motion of Discovery prior to trial. Also attached on lines 46–47 of the phone call log Mr. Bruner clearly states "He states he tried to give them his money and they would not take it only wanted his van." This fact shows that there is no way a grand jury should have indicted me for taking money from Steven Bruner.

**GROUND NINE:**    Petitioner raised a sixth amendment United States Constitutional claim alleging he was denied effective representation of counsel when his appellate counsel failed to properly challenge violations of 14th amendment claims that if properly challenged, would have resulted in the quashing of the indictments raised on the direct verdict and dismissal of his case.

*Supporting Facts:*    Though trial counsel did not raise this issue during pretrial, Appellate counsel still could have raised the issue to present the fact that the indictments were not good on its face. Indictment # 2006-0247 stated that the goods or money taken were the property of Christine Drummond but were actually the property of Dale Horton. In regards to indictment 2006-0248 it stated that money was taken from Steven Bruner but there was never any statements or anything in discovery to indicate that money was taken. Mr. Bruner testified stating there may have been some loose change in the console but yet and still there was never anything put in discovery to

13

indicate this. A good argument could have been raised regarding this issue.

**GROUND TEN:**     Petitioner raised a sixth amendment United States constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of the 14th amendment claims, that if properly challenged, would have resulted in prosecutorial misconduct in regards to leading the jury to believe that D.N.A, fiber and fingerprint analysis are only conducted for unknown suspects and dismissal of his case.

*Supporting Facts:*     The prosecution clearly led the jury stating that D.N.A, fibers and fingerprints are used to find people who are unknown suspects opposed to people who are already in custody twice on trial transcript page 327 lines 15–18 and trial transcript page 335 lines 17–19 which is not true. D.N.A, fibers and fingerprints can also be used to clear innocent people who are already in custody or prove guilt which is an undisputed fact. Also on trial transcript page 330 lines 12–15 clearly shows that Solicitor Barry Barnette had reasonable doubt regarding me in this case. Clearly his statement was out of order.

**GROUND ELEVEN:**     Petitioner raised a sixth amendment United States Constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 14th amendment claims, that if properly challenged, would have resulted in prosecutorial misconduct regarding the Golden Rule and dismissal of his case.

*Supporting Facts:*     All throughout closing arguments Solicitor Barry Barnette continues to use the word remember. To remember is to re-enact. To re-enact is to re-live a situation. It is a fact that there are better ways for a solicitor to present words during the penalty phase. Even in the PCR hearing the Attorney General Ms. White and the judge/court came close to admitting that it was a Golden

Rule issue.  Post Conviction Relief transcript page 70 lines 1–11.

**GROUND TWELVE:**     Petitioner raised a sixth amendment United States constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 14th amendment claims, that if properly challenged, would have resulted in prosecutorial misconduct in regards to leading the jury to consider there being a third male suspect opposed to two which would account for other evidence found in connection with his case and dismissal of his case.

*Supporting Facts:*     Trial transcript page 333 lines 1–7. The prosecutor leads the jury to consider there being a third male suspect in this case to account for other evidence found in connection with this case.  He uses a statement which his star witness Ms. Jeter admitted to lying in prior to trial.  There was a black shirt found on a fence line with a bag of money near a homeless shelter.  Due to the fact that this shirt was not tested like a lot of other evidence in connection with this case which could have proved that there could have been someone else who did these robberies with Ms. Jeter instead of me, he attempts to cover it up.

**GROUND THIRTEEN:**     Petitioner raises a sixth amendment United States Constitutional claim alleging he was denied effective representation of counsel when his trial counsel failed to properly challenge violations of 14th amendment claims, that if properly challenged, would have resulted in evidence of the May of 2006 Bond Hearing Transcript being introduced to show that he was never legally indicted and dismissal of his case.

*Supporting Facts:*     I'm charged with 2 counts of armed Robbery and 4 guns charges. I was given a no bond.  The reason, James Cheeks, who was a private attorney and representative for the Spartanburg County Public Defenders office at the time,

15

requested a bond hearing. I was locked up for nearly 7 months without being indicted which is the reason he requested a Personal Recognizance Bond. I know supporting facts are specifically for the purpose of presenting facts but he wouldn't have asked for a P.R. Bond for 2 counts of armed robbery and 4 counts of Pointing and Presenting Firearms if I were indicted. I have the Motion For Bond Hearing attached, letter to the Court Reporter April Herron attached, and a copy of the amended PCR application (issue under letter (o)) attached. My PCR attorney refused to present the issue, which we discussed, prior to the hearing. I've wrote the court reporter many times as I'm sure the inmate mailing log or records will reflect. She, April Herron, has never responded to give me the information needed to obtain this transcript. The state and representation for me openly admitted I wasn't indicted. It's impossible for me to be indicted January of 2006 if I wasn't indicted May of 2006. I wrote Kathleen Hodges as well but she never attempted to help me obtain this transcript.

[Doc. 1 at 5–38 (emphasis in original).] As stated, on December 16, 2014, Respondent filed a motion for summary judgment. [Doc. 15.] On April 17, 2015, Petitioner filed a response in opposition. [Doc. 33.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under

16

this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the

17

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

18

**Habeas Corpus**

*Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)    (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing

---

[4] In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme

---

to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse

a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must

demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### Statute of Limitations

Under the AEDPA, petitioners have one year to file a petition for writ of habeas

corpus.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review;
>
> (B) the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws
> of the United States is removed, if the applicant was prevented
> from filing by such State action;
>
> (C) the date on which the constitutional right asserted was
> initially recognized by the Supreme Court, if the right has been
> newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or
> claims presented could have been discovered through the
> exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D).  However, the statute tolls the limitations period during the time "a

properly filed application for State post-conviction or other collateral review with respect to

the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the

application is untimely under state law.  *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)

("When a post conviction petition is untimely under state law, 'that [is] the end of the matter'

for purposes of § 2244(d)(2)."  (alteration in original)).  In *Pace*, the United States Supreme

Court held that time limits on filing applications for post-conviction or collateral review are

filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, --- U.S. ---, ---, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

Respondent argues the Petition is time barred. [Doc. 16.] Upon review, the Court agrees that the Petition is untimely and Petitioner is not entitled to equitable tolling.

**Expiration of Limitations Period**

The South Carolina Court of Appeals affirmed Petitioner's conviction on December 11, 2008 [Doc. 16-7], and Petitioner did not seek further review. Consequently, Petitioner had one year from December 29, 2008,[5] fifteen days after the South Carolina Court of Appeals' opinion was filed, to file a federal habeas petition. 28 U.S.C. § 2244(d)(1); *Gonzalez v. Thaler*, --- U.S. ---, ---, 132 S. Ct. 641, 653–54 (2012) (holding that a judgment

---

[5]Pursuant to Rule 263(a) of the South Carolina Appellate Court Rules, when calculating time, the last day of the period is to be included "unless it is a Saturday, Sunday or a state or federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday." Here, the fifteen-day period for Petitioner to file a motion for rehearing by the Court of Appeals expired on Friday, December 26, 2008. The Court is unable to determine whether December 26, 2008 was a state holiday; therefore, out of an abundance of caution, the Court will assume it was a state holiday and calculate the limitations period from Monday, December 29, 2008.

becomes final for purposes of § 2244(d)(1) "when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires"); S.C. App. Ct. R. 221(a), 242(c) (establishing that a decision of the South Carolina Court of Appeals is not final for purposes of petitioning the Supreme Court of South Carolina for review until the petitioner has filed a motion for rehearing by the Court of Appeals, and such motion must be filed within fifteen days of the Court of Appeals' decision).

Here, Petitioner filed his PCR application on May 27, 2009, such that 149 days of the one-year limitations period had expired before Petitioner filed his PCR application. The one-year period in which to file a federal habeas petition is tolled during the pendency of a PCR application or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and Respondent concedes the statute of limitations was tolled during the period the PCR application was pending—from May 27, 2009 until September 27, 2013, when the South Carolina Court of Appeals issued remittitur in the appeal from the denial of Petitioner's PCR application [Doc. 16-13].[6] Therefore, the one-year limitations period began to run again on September 27, 2013 and expired 216 days later on May 1, 2014. As a result, the Petition—filed on September 5, 2014, more than four months after the expiration of the limitations period—is time barred.

---

[6]The Court is aware that at least one district judge in this district has held that final disposition of a postconviction proceeding in South Carolina, for purposes of determining the date when a case is no longer pending under § 2244(d)(2), does not occur until the remittitur is filed in the circuit court. *Beatty v. Rawski*, Civil Action No. 1:13-3045-MGL-SVH, 2015 WL 1518083 (Mar. 31, 2015). However, in this case, using the filing date of the remittitur would not change the outcome. The remittitur was filed on September 30, 2013, three days after it was issued. [Doc. 32-1.] As discussed supra, the Petition was filed more than four months after the expiration of the limitations period; accordingly the three-day delay in filing the remittitur is of no consequence in this case.

**Equitable Tolling**

Petitioner argues he was "improperly advised" regarding the statute of limitations because he was told he "had one year to file after certiorari." [Doc. 33 at 17.] For the reasons explained below, Petitioner is not entitled to equitable tolling.

As the United States Supreme Court has recognized:

> Under our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L. Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L. Ed. 955 (1880)). . . . Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S. Ct. 1723, 1725, 80 L. Ed.2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 96 (1990) (footnotes omitted). The Fourth Circuit Court of Appeals has underscored the very limited circumstances in cases subject to the AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of

> clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).[7]   The Supreme Court has suggested that equitable tolling is justified to relieve the operation of a limitations bar due to egregious unprofessional attorney misconduct, such as abandoning the client; a last minute change in representation beyond the client's control; failing to conduct essential services of representation like communicating with the client and performing basic legal research; and denying the client access to files and misleading the client.  *Holland*, 130 S. Ct. at 2564 (citations omitted).  Further, as previously stated, the Supreme Court has held that, in addition to demonstrating extraordinary circumstances prevented the petitioner from timely filing, the petitioner must demonstrate he has been diligently pursuing his rights.  *Id.* at 2562.

---

[7]Other courts of appeals have similarly expressed that equitable tolling of the AEDPA statute of limitations is to be employed sparingly.  *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying the general rule that "'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling'" (citation omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ( "[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the petitioner's] habeas petition in the district court within the one-year limitations period."); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition from Atlanta to Miami less than a week before it was due); *see also Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect." (citation omitted)).

Here, Petitioner has failed to demonstrate that extraordinary circumstances beyond his control or external to his own conduct prevented him from filing his Petition within the statute of limitations.  With respect to Petitioner's argument that he was improperly advised of the statute of limitations, ignorance of the law is insufficient to justify equitable tolling. As the Fourth Circuit Court of Appeals has held, in the context of equitable tolling of the statute of limitations, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."   *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citations omitted); *see also Harris*, 209 F.3d at 330–31 (holding that unfamiliarity with the legal process, lack of representation, or illiteracy are not grounds for equitable tolling).  To the extent Petitioner argues that an attorney improperly advised Petitioner of the statute of limitations [*see* Doc. 33 at 17 (stating he was "told" he had one year "after certiorari" and asking the Court "to consider counsel's wrongdoings"), such argument fails for two reasons. First, this argument is vague and conclusory.  Petitioner does not allege *who* told him about the statute of limitations and provides nothing beyond his own conclusory statement to establish he was improperly advised.   Additionally, even if Petitioner was improperly advised, the Court cannot find that it was impossible for Petitioner to timely file the Petition. *See Harris*, 209 F.3d at 330 (explaining that "the doctrine [of equitable tolling] has been applied in 'two generally distinct kinds of situations . . . [including when] extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time'" (quoting *Alvarez–Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996))).  Finally, to the extent Petitioner asks the Court to "in the name of justice . . . show mercy and hear Petitioner's case," the Fourth Circuit Court of Appeals has rejected the use of an alternative test for equitable tolling that would consider a petitioner's underlying claims, stating that

"[a]llowing consideration of the merits of the time-barred claims to creep into the equitable tolling analysis lets petitioners effectively circumvent the statute of limitations because the merits of their claims will always be considered."  *Rouse*, 339 F.3d at 251 (4th Cir. 2003). Accordingly, Petitioner has failed to provide any grounds for equitably tolling the federal statute of limitations.  Therefore, the Court determines the Petition should be dismissed as time barred.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 8, 2015
Greenville, South Carolina